SOUTH BRANCH LUMBER CO. v. ROBERT LITTLEJOHN ET AL.

[FILED MARCH 24, 1891.]

1. Promissory Note: PAYMENT: FAILURE TO PROVE. One L., having dealings with the Stewart-Chute Lumber Co. at Adams, Nebraska, in 1887, gave his note thereto for $269.80. This note soon afterwards was transferred to the South Branch Lumber Co., which brought an action on the note. L. pleaded payment, and in support thereof introduced a receipt, "Received from D. Littlejohn $100 on account, $100. Signed, S. C. L. Co." The party giving this receipt did not have the note in his possession, and the proof failed to show that he was authorized to receive the money. *Held,* A failure of proof on a material point.

2. ———: ———: AUTHORITY TO RECEIVE: BURDEN OF PROOF. A party who pays money to another, to be applied on a note which such person has not in his possession, assumes the burden of proof to show the authority of the person to whom payment is made to receive the money.

ERROR to the district court for Gage county. Tried below before BROADY, J.

*Chapman & Geisthardt,* and *C. G. Dawes,* for plaintiff in error.

*W. S. Summers, contra.*

MAXWELL, J.

This action was brought by the plaintiff in error against the defendant in error in July, 1888, upon a promissory note as follows:

"$269.80.                    ADAMS, NEB., March 4, 1887.

"On or before nine months after date, I promise to pay to the order of the Stewart-Chute Lumber Co. $269.80, at Adams, Gage County, Nebraska, value received, with interest at the rate of 10 per cent per annum.

"DAVID LITTLEJOHN.    ROBERT LITTLEJOHN."

It is alleged in the petition that on the 9th day of December, 1887, the Stewart-Chute Lumber Co., by its president, Francis Beidler, endorsed said note and delivered the same to plaintiff. The answer of the defendant admits the making of the note, but alleges payment thereof, and denies that the plaintiff is the owner of the note. On the trial of the cause the jury returned a verdict in favor of the plaintiff for the sum of $41.19, upon which judgment was rendered. As evidence of part payment on behalf of the defendant the check of David Littlejohn for $150 was introduced in evidence as follows:

"$150.                    BEATRICE, NEB., February 4, 1888.

"American Savings Bank, pay to the Bank of Adams, or bearer, one hundred and fifty dollars.

"DAVID LITTLEJOHN."

The proof shows that this check was applied on the note in suit. There is also a receipt marked "Exhibit B" in the record, of which the following is a copy:

"ADAMS, NEB., June 22, 188—
(The last figure illegible.)

"Received from D. Littlejohn one hundred dollars on account.

"$100.                               S. C. L. Co."

It will be observed that according to the receipt this money was to be applied on account which, if the defendant's testimony is true, had, at the time of the payment been merged into the note in suit.

The defendant David Littlejohn was called as a witness in his own behalf, and on cross-examination testified as follows:

Q. You say you made just two payments on that note?
A. Yes.

Q. What time did you state they were made?
A. Some time in the fore part of the summer of 1887 —I believe in the winter of 1888.

Q. What were these two sums?
A. One was for $100, and one for $150.

Q. Which of the two was paid first?
A. Why, the $100 was paid first.

Q. (Showing defendant defendant's Exhibit B.) When was this receipt given—the date seems to be obliterated?
A. Some time in 1887, in the fore part of the summer.

Q. To whom did you pay that money?
A. It was to some one who demanded it, a representative; I cannot say whether Huyser or another party there, I would not be positive.

Q. Do you remember who was in charge of the Stewart-Chute Lumber Company at that time?
A. It was generally considered that Huyser was the head of the firm.

Q. Did you pay it to Huyser?
A. I think so, but I would not be certain.

Q. What is your recollection, that you did pay it to Huyser?

A. I believe I paid it to Huyser, to the best of my knowledge.

Q. You would not be certain about that?

A. I feel pretty certain, but at the same time it was quite a while ago and I didn't charge my memory a great deal with it.

Q. How did you pay this money?

A. Paid it in money.

Q. In cash?

A. Yes.

Q. What was it for?

A. It was to apply on this $262 note; the reason the note was drawn to pay on or before was so I could pay at any time.

Q. This receipt states to pay on account; did you ever have any other deal with the Stewart-Chute Lumber Company?

A. No, sir; one deal was all I wanted with the Stewart-Chute Lumber Company. I give you that as a pointer.

Q. You state that positively?

A. Yes; one was all I had and one was all I wanted.

Q. This, you say, was paid to Huyser?

A. I think so.

Q. Did you pay this at the date the receipt bears date here?

A. I suppose I did.

Q. Who made out this receipt?

A. Why I cannot say; if it was Huyser I paid it to— it was him that made out the receipt.

Q. Was the receipt made out at that time?

A. Yes.

Q. Did Huyser have the note at that time?

A. No, sir, he didn't.

Q. Do you know where the note was?

A. No, sir, I didn't know where the note was.

Q. Do you know whether he was authorized to receive money on that note?

39

A. He was the only man that dunned me and dogged me about the note, and I supposed he was the man I was legally liable to; he was the man I bought the lumber of.

Q. You didn't see the note at that time?

A. No, sir, I didn't see the note at that time; I don't know that I saw the note when I paid the $150.

Q. Do you know who was the owner of the note at the time you paid this money?

A. Not positively, I don't.

Q. You don't know whether the Stewart-Chute Lumber Company owned it or not?

A. It was their representative that always kept dogging me for the money. I know that Huyser represented —— (Objected to.)

BY THE WITNESS: If you had allowed us to answer you would have heard more; you would have heard the case from stem to gudgeon.

Plaintiff moves to strike out the testimony in chief of the witness in regard to paying this amount as incompetent, immaterial, irrelevant, and not showing the agency of Huyser, if he was the man to whom the money was paid. It is shown that this note was transferred to the South Branch Lumber Company, and was indorsed to the South Branch Lumber Company before that time, and it is not shown that Huyser had the note or was authorized to receive money on it, if such payment was made. Objection overruled. Plaintiff excepts.

Q. Did you ever see that note at any time before suit was brought on it?

A. I don't know that I ever saw it at all?

Q. Who did you say you paid the other $150 to?

A. I went down to Adams, and the first man I ran across was Huyser. He said, you are the man I want, and that he was thinking of starting an action against me. We went into the bank and I gave him a check for $150.

Q. Is that the check there?

A. Yes.

Q. You gave it to the bank?

A. Yes, I wrote out one to Huyser and they made the correction; they said the bank was collecting it.

Q. Huyser didn't have the note then, did he?

A. Not that I know of.

Q. You don't know that he had?

A. No, I don't.

Q. You don't know that he ever had it?

A. No, I don't; I don't know that he had it any more, only every time he found any one coming out that way he would send word that he would sue it, and kept dogging me; I don't know that I ever saw the note from the day it was given until to-day.

Q. You don't know whether Huyser was authorized to receive payment or not?

A. It seemed like he was authorized; he was digging around for it.

Q. The other time he was hounding you; when you paid the $150 he took you to the bank to pay it?

A. Yes.

Mr. R. E. Childs testifies that he was present whan Mr. Littlejohn paid Keiser or Huyser (whatever the name is) some money.

He states that he did not know the amount but leaves us to infer that they were talking about $100. He also testifies that the payment "was for lumber. I could tell from the talk."

Arie Huyser was called as a witness for the plaintiffs and testifies that the $100 was not paid to him, nor any part of the note or debt for which the note was given after the note was taken.

There is no claim nor any proof tending to show that Huyser or any agent of the plaintiff at Lincoln, had any authority to receive a payment on the note and receipt therefor.

Had the note been in the possession of the party and a payment made thereon the owner would be bound by such payment. Where, however, payment is made to a party who has not the note in his possession the person paying assumes the burden of proof to show his right to receive the money.

In the case at bar there is a failure of proof on this point and for that reason a new trial must be had. Before another trial takes place it is probable that an issue should be raised by the pleadings in regard to the payment of the $100, but this is a matter for the parties and the district court to consider and determine.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.