Richards v. Waller.

MARY O. RICHARDS, APPELLANT, V. JOHN WALLER ET AL., ·IMPLEADED WITH L. C. GILBERT, APPELLEE.

FILED NOVEMBER 18, 1896.   No. 6816.

1. **Principal and Agent:** PROOF OF AUTHORITY TO RECEIVE PAYMENT. One who makes payment to a second person, not the owner of a note and not in possession of it, of money to be applied in payment of the debt thereby evidenced, assumes the burden of proving that the party to whom payment was made was empowered to collect the money.

2. ———: ———. The fact that a person, or company, is authorized to receive the installments of interest which became due on a mortgage note or bond is not sufficient ground from which to infer that the authority also exists to collect or receive the principal sum, if the evidences of the indebtedness are not and have not been in the possession of such person or company.

3. **Mortgages:** NOTES: AUTHORITY TO RECEIVE PAYMENT. "Where payment of a negotiable note secured by mortgage was made to an investment company, * * * and such payment was never forwarded to the party to whom such note had been transferred, *held,* that the mere fact that antecedent payments [of interest] made in like manner had been made to be forwarded to the transferee of such note, and had been so forwarded, did not bind the holder of the note as to the final payment not forwarded, it being shown by the evidence that such holder had never in any way held out or recognized the mortgagee [investment company] as his agent." (*Bull v. Mitchell,* 47 Neb., 647.)

APPEAL from the district court of Webster county. Heard below before BEALL, J.

*James McNeny,* for appellant.

*J. S. Gilham* and *Case & McNitt, contra.*

HARRISON, J.

This action was commenced in the district court of Webster county by Mary O. Richards against John Waller and others to foreclose a mortgage on a quarter section of land situate in Webster county. One of the defendants, L. C. Gilbert, who had purchased the land of Waller after the execution of the mortgage in suit, answered as a defense the payment of the amount secured by the mortgage and his consequent right to its cancellation. As a result of a trial in the district court the answering defendant was awarded a favorable decree, from which the plaintiff appealed to this court.

It appears that on October 20, 1885, John Waller, then owner of the quarter section of land involved in this suit, obtained a loan of $300 from one James H. Tallman, through the agency of the Nebraska & Kansas Farm Loan Company, doing business at Red Cloud, this state, and evidencing the indebtedness thus created, executed and delivered a promissory note or bond for the principal sum of $300, due October 1, 1890, and the ten interest coupons thereto attached, providing for the payment of the interest on the principal sum semi-annually during the expressed life of the loan. All the instruments mentioned were by their terms payable at the Mechanics Savings Bank, Hartford, Connecticut, and to secure the payment of the bond and its accompanying coupons the mortgage in suit was duly executed and delivered. It was also stated in the mortgage that the payments of the moneys which it was given to secure were to be made at the bank designated, as we have hereinbefore set forth. The payee named in the instruments was James H. Tallman, who resided in Hartford, Connecticut, to whom they were immediately forwarded and by whom they were, a very few days after he received them, sold and assigned to the plaintiff in this suit; and we will state here that the assignment of the mortgage

was never recorded in Webster county. James H. Tall-man was an active, working member of the firm of George W. Moore & Co., loan brokers, doing business in Hartford, Connecticut, and this firm received, approved, and filled a large number of applications for loans, sent to them by the Nebraska & Kansas Farm Loan Company of Red Cloud, the notes and mortgages evidencing and securing these loans being taken in the name of James H. Tallman as payee. Of these was the Waller loan, the one involved herein. On the 1st of September, 1886, Waller sold the mortgaged land to L. C. Gilbert, the answer-ing defendant. Waller paid one or two interest coupons during the time he retained the ownership of the farm, paid the money to the Nebraska & Kansas Farm Loan Company, and he received the coupon from it. He was not sure whether at the time he paid the money, or after it had been sent east and the coupon forwarded to the company at Red Cloud. Gilbert, after his purchase of the farm, made the payments of interest coupons, and finally the principal, to the loan company at Red Cloud, and the interest money was sent to George W. Moore & Co. at Hartford and the coupons forwarded by the eastern firm to the loan company at Red Cloud and by it delivered to Gilbert. The principal was deposited by the western company in the bank to its credit, and was never sent east or paid to the owner of the note and mortgage, and the question to be determined in this case is upon whom must the loss fall, Gilbert, the grantee of the borrower, or the owner of the note and mortgage.

There was evidence introduced on the part of the de-fense, some of it incompetent, but such as was competent, tended to show the general course of dealing in respect to loans by and between the eastern, or Hartford firm, and the western loan company; that interest on loans which had been made through it by the eastern firm was collected by the Nebraska & Kansas Farm Loan Com-pany and forwarded to the firm at Hartford; and, when necessary, or probably in all cases prior to the time the

Richards v. Waller.

interest on any loan was due, notice of the fact was sent to the borrower by the western company, which was in the shape of a dun and which urged payment at the office of the western company, and when paid to it and it was sent to and received by the Hartford firm, it was paid to the owner of the note and mortgage in each particular case, the interest coupon obtained and sent to the western company, and by it delivered to the borrower. It was in evidence that generally the taxes and insurance on property included in any of the loans were looked after by the western company, and the owners urged to renew the insurance at the proper time and to pay taxes promptly. From this general showing of the business relations and manner of the conduct of loan transactions by and between the Hartford firm and the western company, it was and is urged that the inference arose, or should be or have been drawn, that both had authority to make collections of interest and principal of all the loans negotiated through their instrumentality, and that this obtained as to the one held by plaintiff, inasmuch as it had been proved that collections of interest had been made by the western company, forwarded to the eastern firm, and received by plaintiff from the Hartford firm in payment of interest due. But on behalf of plaintiff it was in evidence that she purchased the note and mortgage of Tallman and received them, together with the proper assignment, and had ever since retained possession of them until they were given to the eastern firm to be foreclosed, and that she never had any knowledge that the Nebraska & Kansas Farm Loan Company had received any of the payments,—in fact, that she was not aware of the existence of the company. The note was negotiable, which fact was notice to its maker and all parties concerned that its ownership might be changed at any time. All payments, by the terms of the instrument, were to be made at a specifically designated place, the Mechanics Savings Bank of Hartford, Connecticut. This court has held: "One paying money to another to be applied on a note which such

person has not in his possession, assumes the burden to show the authority of the person to whom the payment is made to receive the money." (*South Branch Lumber Co. v. Littlejohn*, 31 Neb., 606; *First Nat. Bank of Omaha v. Chilson*, 45 Neb., 257; *Bull v. Mitchell*, 47 Neb., 647.)

There was no evidence which it can be claimed tended to prove that either the Hartford firm or the western company had any authority to collect the amount of the principal of this loan at the time it was received by the loan company. "Authority of an agent to receive interest * * * on a mortgage * * * does not afford ground for inferring authority to collect the principal, where the agent is not entrusted with the possession of the securities." (Jones, Mortgages, sec. 964, and cases cited.) The defendant stated that he received notices from the western company in regard to interest installments, but does not say that he was notified by it to pay the principal when due, but that he, apparently of his own motion, procured a draft for the amount of the principal of the loan, at or about the time it was to be paid, and sent it to the secretary of the Nebraska & Kansas Farm Loan Company, and afterwards received from him a letter in which the receipt of the draft was acknowledged, and it was stated that the release of the mortgage would be sent to him (Gilbert, the defendant) as soon as received from the east. In the opinion in the case of *Bull v. Mitchell, supra,* which case, in its facts, was somewhat similar to the one at bar, differing only in some details unimportant or not controlling in their character, it was announced: "Where payment of a negotiable note secured by mortgage was made to an investment company of which the mortgagee was manager, and such payment was never forwarded to the party to whom such note had been transferred, held, that the mere fact that antecedent payments made in like manner had been made to be forwarded to the transferee of such note, and had been so forwarded, did not bind the holder of the note as to the final payment not forwarded, it being shown by the evi-

dence that such holder had never in any way held out or recognized the mortgagee as his agent."

The cases* cited by counsel, in the Federal Reporter, are, we think, not applicable or governing, for the reason that in them the authority of the agent or party to whom the money was paid to collect it clearly appeared from the facts proved, while in this case the contrary is true. Under the facts and circumstances developed in evidence in this case, and the rules of law applicable thereto, the findings and decree of the district court were clearly wrong, were not sustained by the evidence, and must be reversed and a decree entered in this court finding the amount due on the note and mortgage in suit and awarding a foreclosure of the mortgage.

JUDGMENT ACCORDINGLY.

---

*Security Co. v. Richardson*, 33 Fed. Rep., 16; *Security Co. v. Christy*, 33 Fed. Rep., 22; *Kent v. Congdon*, 33 Fed. Rep., 228.