VINTON S. HOWE ET AL., APPELLEES, v. PROVIDENT LOAN & INVESTMENT COMPANY, APPELLANT.

FILED FEBRUARY 21, 1936. No. 29424.

*Claude S. Wilson, Roy F. Gilkeson* and *Hymen Rosenberg,* for appellant.

*O. B. Clark, contra.*

Heard before GOOD, EBERLY and PAINE, JJ., and RAPER and PROUDFIT, District Judges.

PROUDFIT, District Judge.

This action is an appeal from the district court for Lancaster county, in which the appellees, Vinton S. Howe and Clara R. Howe, sought to recover damages from the appellant, Provident Loan & Investment Company, for damages for breach of an alleged oral contract of repurchase of certain securities which appellees had purchased from the appellant. A synopsis of the petition follows:

Appellees allege in their petition that they are husband and wife, and for more than 15 years have purchased bonds from the appellant, and that appellant orally represented to appellees that any of such bonds would be repurchased from appellees by appellant at par or face value of said bonds, together with all accrued interest, less one month's interest; that relying upon said representations and promises the appellees from time to time prior to July 1, 1932, purchased from the appellant certain bonds; that on April 1, 1929, July 1, 1929, September 1, 1929, and March 1, 1931, and at divers other times, appellant agreed with appellees that if the appellees would purchase bonds from the appellant, appellant, at any time appellees desired to cash said bonds or needed the money invested therein, would on request repurchase said bonds or any one or more of them at the option of appellees for cash, and pay immediately upon request of appellees the par or face value of said bonds, together with accrued interest less one month's interest; that appellees, relying upon said promises and agreements of appellant to repurchase said bonds, jointly purchased from the appellant on or about said dates certain bonds and paid appellant for same the consideration demanded and became the joint owners thereof; that on or about September 28, 1933, and again on December 20, 1933, and at other times,

appellees, desiring to cash said bonds, requested appellant to repurchase the same, and tendered to the appellant said bonds and offered to deliver and surrender the same to appellant; that appellant has at all times refused and declined appellees' tender of said bonds, and failed and refused to repurchase said bonds or any of them. Appellees pray judgment for damages accordingly.

The appellant in its answer admits that it sold to appellees bonds described in appellees' petition, but alleges that each and all of said bonds were sold to the appellees upon an express agreement in writing indorsed on each of said bonds; that said bonds and each of them were sold to the appellees without recourse on the appellant, and specifically denies in its answer that it or its officers, agents or servants ever represented or promised to appellees or either of them, either orally or in writing, that the appellant would repurchase said bonds sold to appellees on any terms or conditions whatsoever.

The trial was had to a jury, which resulted in a verdict and judgment in favor of appellees and against the appellant. Motion for new trial was filed by the appellant in due time and was overruled. Errors relied on for reversal are insufficiency of the evidence to support the verdict, and error in giving instruction No. 7.

In passing it may be well to say that the other errors complained of relate entirely to the sufficiency of the evidence. A careful reading of the record discloses the fact that there was sufficient evidence offered by the appellees and received, if believed, to support the verdict of the jury, and it should not be overturned unless there should be found reversible error in the admission or exclusion of evidence, or in the instructions to the jury given by the court. A careful reading of the record also discloses no reversible error in the admission of evidence or exclusion of same.

The appellant contends strenuously that there is reversible error to be found in instruction No. 7, which reads as follows:

"You are instructed that the employees of the company

mentioned in the testimony herein would have the same power and authority to bind the company by any agreement with the plaintiffs, if any you find was made."

At first reading this instruction would seem to be incomplete and that a phrase had been omitted therefrom. Evidently the court intended to say to the jury that the employees of the company mentioned in the testimony would have the same power and authority *as the executive officers of the company* to bind it by any agreement with the plaintiffs, if any you find was made. However, the meaning of the instruction is plain and the jury would undoubtedly understand from it that the law of the case was that the employees referred to in the testimony had the same power and authority as the executive officers of the company in respect to any agreement made with the plaintiffs, in the event that they found that any agreement was made. There is nothing in the record to indicate that any promise on the part of the appellant company to repurchase bonds sold by it was ever made to these appellees by any executive officer of the company. The promise relied upon was made by those who, for the purpose of this action, must be considered as employees of the appellant, and the case turns upon this proposition: Were the employees mentioned in the testimony authorized to make a repurchase agreement with the appellees when the bonds in question were sold?

The action was tried upon the theory of an express promise of the appellant corporation and not upon the existence of a custom in its business. The evidence comes far short of establishing express authority on the part of said employees to make a repurchase agreement in connection with the sale of the bonds involved herein, and the right to recover, if any, rests upon the apparent power of said employees to make such promise, as distinguished from their implied power.

It is well settled that the "principal is bound by the acts of his agent to the extent of the apparent authority conferred on him." *Webster v. Wray,* 17 Neb. 579, 24 N. W. 207.

"Ostensible authority to act as agent may be conferred if the party to be charged as principal affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to trust and act upon such apparent agency." *Thomson v. Shelton,* 49 Neb. 644, 68 N. W. 1055.

"The apparent authority of an agent which will bind his principal is such authority as the agent appears to have by reason of the actual authority which he has." *Creighton v. Finlayson,* 46 Neb. 457, 64 N. W. 1103. Cited with approval in *Cooper & Cole Bros. v. Cooper,* 90 Neb. 209, 133 N. W. 243.

Implied power rests upon a different basis. It arises when the situation is such that the agent by the exercise of his express power alone is not able to transact business committed to him, but finds the additional or implied power indispensable to the execution of such transaction; while the apparent power rests upon the power apparently conferred by the principal upon the agent in the transaction of his business. It is not necessary to a decision of this case to discuss the implied powers of the employees of the appellant herein, as the case does not turn upon implied powers, but upon apparent powers. The evidence presents this state of facts: The appellant occupied the same suite of rooms with another corporation, namely, the Provident Savings & Loan Association, and the employee who officiated in the major portion of the transactions with the appellees occupied an inclosed desk, called a cage in the evidence, convenient of access to the portion of the room occupied by the Provident Savings & Loan Association, as well as the portion of the room occupied by the appellant, and it appears that she was in the pay of the building and loan association, but devoted much of her time to the work of appellant, and for the purpose of this action may be said, as a matter of law, to have been an employee of the appellant. The business of appellant was that of the ordinary investment company, namely, making real estate loans, selling the notes or bonds in connection therewith, collecting the interest, and, in short, following the well known

routine of investment companies. Miss Ferguson, who was the chief witness for the appellant and the employee hereinbefore referred to, was active in the sale of loans, collection of interest, disbursement of proceeds of interest coupons when paid, and also of payments on principal notes. It is also undisputed that for many years appellant followed the practice of making repurchase agreements when investments were sold to their patrons, and, according to the testimony of Miss Ferguson, whenever a repurchase agreement was made such agreement was indorsed on the sales slip accompanying the other papers in connection with the investment, which set forth that appellant would, upon request of the holder of such note or bond, pay the principal note with accrued interest thereon, less thirty days' interest. It is also undisputed that bonds were sometimes repurchased where no agreement had been made, as a matter of accommodation to patrons. It is claimed by appellees that the bonds involved in this action were purchased from appellant (negotiations for the purchases being conducted through Miss Ferguson), and that in each instance she made an oral promise to repurchase said bonds at the request of the appellees for the face value of the bonds, less thirty days' interest. Miss Ferguson disputes this testimony and says positively that she made no such promise. She does admit that at certain times previous thereto she had repurchased certain bonds or coupons where there was no stamped indorsement of repurchase agreement on the sales slip, but that was not because of any agreement, but as a matter of accommodation to the patron, and that she had no authority to make any such agreement as relating to the bonds involved in this suit.

The jury having found against the appellant, and there being sufficient evidence, if believed, on the part of appellees to support such finding, the verdict must stand unless there is error in the admission or exclusion of testimony, or any instruction. There does not appear to be any reversible error in the rulings on the admission and exclusion of evidence. Appellees assert that the question of authority of

the representative of the investment company is not in issue in this case; that the only issue is, was the repurchase agreement made by the appellant? and that that does not involve the authority of the representative of the company to make the promise. The authority of the representative or employee may be said to be fairly within the issue as there is no contention that the promise was made by any executive officer of the appellant, but the only promise or agreement was entered into by the employee, Miss Ferguson. However, in one transaction Miss Ferguson testifies that she did not act, but another employee, Miss Hill, who was working under her in the same office, conducted the negotiations. But a fair conclusion would be that both employees were in the same category.

"Where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform a particular act, and therefore deals with the agent, the principal is estopped as against such third person from denying the agent's authority.

"Whether or not an act is within the scope of an agent's apparent authority is to be determined under the foregoing rule as a question of fact from all the circumstances of the transaction and the business." *Holt v. Schneider,* 57 Neb. 523, 77 N. W. 1086; *Johnston v. Milwaukee & Wyoming Investment Co.,* 46 Neb. 480, 64 N. W. 1100.

"If differing, fair inferences may be drawn by candid, impartial minds from undisputed facts in evidence, the question to be determined is not one of law for the court, but one of fact, to be solved by the trier of the facts." *Thomson v. Shelton,* 49 Neb. 644, 68 N. W. 1055.

The authority of the employees to bind appellant by a promise to repurchase securities sold to appellees was directly in issue. The burden of proof was upon the appellees to establish the authority. Instruction No. 7 assumes that the authority existed and the jury were so informed. It

seems hardly necessary to cite any authorities to establish the proposition that such instruction was erroneous. In fact, this court has said in *Miller v. Central Taxi Co.*, 110 Neb. 306, 193 N. W. 919: "It is elementary that the jury and not the court is the trier of questions of fact." In *Ogden v. Sovereign Camp, Woodmen of the World*, 78 Neb. 806, 113 N. W. 524, it is said: "Where the facts are disputed, it is solely the province of the jury to determine the same; and, whether the facts be disputed or undisputed, if different minds might honestly draw different conclusions from them, the case is properly left to the jury."

The cause should have been submitted to the jury under appropriate instructions to determine whether or not the employees of appellant had the apparent authority to make the repurchase agreement, as alleged in the petition and testified to by the appellees; and in assuming, as a matter of law, that the authority existed the court erred, and said error was prejudicial to the appellant, and for that reason the action of the trial court should be reversed and the cause remanded for further proceedings according to law.

REVERSED AND REMANDED.